# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| NATHAN GODFRIED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:19-cv-00372-NT |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before me is the Defendant's motion for summary judgment ("**Def.'s Mot.**") (ECF No. 65). For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND[1]

On August 8, 2013, the Plaintiff, Nathan Godfried, was riding his bicycle in Passadumkeag, Maine, when he was struck by the protruding blade of a Ford Rear Attached Mower Series 501 Component 14-92 (the "**Mower**"). Reply Statement of Material Facts ("**SOF**") ¶¶ 2–3 (ECF No. 74). As a result of this accident, Dr. Godfried's left leg had to be amputated above the knee, and he injured his left shoulder. SOF ¶ 5.

On the day of the accident, the Mower blade was being held in its upright position by a transport rod that was not original to the Mower. SOF ¶¶ 6–7. But at

---

[1] The following background is drawn from the parties' combined statements of fact ("**SOF**") (ECF No. 74) or directly from documents in the summary judgment record, which is found at ECF No. 64 (the "**Record**"). The Plaintiff objects to some of the Defendant's statements of fact, *see* SOF ¶¶ 10–13, 15–19, 25, 58, although I need not address these objections because I do not rely on any of the statements of fact to which the Plaintiff objects. Even if I were to grant all of these objections, there would remain no genuine issue of material fact based on the admissible evidence in the Record.

the time of the accident, the Mower blade slipped out of its upright and locked position. SOF ¶ 4; Dep. of Frank L. Cochran 65:5–15 (ECF No. 64-2). The Mower's original transport rod (which was not being used at the time of the accident) secured the blade in a different manner than the replacement rod did. SOF ¶¶ 7–9.

In order to assist him in this litigation, the Plaintiff retained an expert, Karen Horton, a professional engineer and professor of mechanical engineering technology. SOF ¶ 21. Professor Horton examined the Mower on May 3, 2017. SOF ¶ 14. A few days after her examination of the Mower, Professor Horton prepared a report on her findings. SOF ¶ 30; May 8, 2017, Karen Horton Expert Report (the "**expert report**") (ECF No. 64-8). Professor Horton concluded that the replacement rod was flawed and that its design created a risk of detachment while the Mower was being transported, causing the Mower blade to fall. SOF ¶ 32. But Professor Horton acknowledged that this conclusion applied only to the replacement transport rod, not the original transport rod. SOF ¶ 33; Expert Report 3. The expert report contains no conclusions related to the original transport rod.

On November 8, 2021, counsel for the Plaintiff sent an expert designation letter to counsel for the Defendant, explaining that Professor Horton was being designated as an expert and stating:

> Professor Horton is of the opinion that both the original restraining device and the replacement one were defective in that there was no secondary restraining device should the primary device fail. The factory-installed device ultimately relied upon cotter pins and the replacement device relied on a nut and bolt. Either was subject to unexpected failure given the vibrations and movement inherent in transporting the sickle mower over farm, fields, or highways. The dangers to bystanders, be

2

> they pedestrians, farmworkers or cyclists, were so immense that a second restraining device was necessary.

November 8, 2021, Letter from Arthur J. Greif (the "**expert designation letter**" or the "**letter**") (ECF No. 64-9). This letter was signed by counsel for the Plaintiff and indicates that Professor Horton was sent a copy.

On December 20, 2021, Professor Horton was deposed by the Defendant. Dep. of Karen J. Horton, P.E. ("**Horton Dep.**") (ECF No. 64-6). And on January 22, 2022, Professor Horton signed an errata sheet in which she made a number of changes to her deposition testimony. Horton Dep. Errata Sheet ("**Errata Sheet**") (ECF No. 64-7). Because Professor Horton's deposition testimony and her errata sheet play a significant role in the summary judgment briefing, I describe this testimony and the errata at some length.

Towards the beginning of the deposition, counsel for the Defendant (Michelle Schaffer) briefly reviewed the expert report with Professor Horton. Horton Dep. 34:17–35:22. After reviewing this report, Ms. Schaffer asked Professor Horton whether she had "reached any other opinions to a reasonable degree of engineering probability" with respect to the Mower. Horton Dep. 35:23–36:2. Professor Horton responded: "No." Horton Dep. 36:3. On her errata sheet, Professor Horton sought to supplement this response on the grounds of "Clarity" by adding the following statement: "I also hold the opinions reflected in the expert designation letter of 11/8/21, whose contents I approved and helped edit." Errata Sheet 1.

Later on in the deposition, Ms. Schaffer questioned Professor Horton at length about her inspection of the Mower. Horton Dep. 109:10–129:2. And Ms. Schaffer

3

asked whether Professor Horton reached any conclusions from her inspection other than those she testified to. Horton Dep. 135:1–4. Professor Horton responded: "Only the conclusions in my report." Horton Dep. 135:5. When Ms. Schaffer followed up on this response, Professor Horton clarified that she did not think there was "anything additional in [her] report" beyond what she had already testified about. Horton Dep. 135:6–10. On her errata sheet, Professor Horton sought to supplement this response on the grounds of "Accuracy" by adding the following statement: "and those in the 11/8/21 expert designation letter." Errata Sheet 1.

A short while later, Ms. Schaffer asked Professor Horton: "Now, you have offered no opinions of defect on the original design transport rod, correct?" Horton Dep. 149:22–23. Professor Horton responded: "Correct." Horton Dep. 149:24. Ms. Schaffer then asked whether it was correct that she had "offered no opinions of defect methodology for transporting the sickle bar as described in the operator's manual" (i.e., with respect to the original transport rod). Horton Dep. 149:25–150:6. Professor Horton again responded: "Correct." Horton Dep. 150:7. But then, in her errata sheet, Professor Horton sought to supplement both of these responses on the grounds of "Accuracy" by adding "other than those in the expert designation letter."[2] Horton Errata Sheet 1.

---

[2] The Errata Sheet seeks to add this language to lines 150:3 and 150:11. Horton Dep. Errata Sheet ("**Errata Sheet**") 1 (ECF No. 64-7). But these lines are in the middle of Ms. Schaffer's questions, not Professor Horton's answers. It is clear from the Plaintiff's denial of DSOF ¶ 44 and the accompanying citation that these lines on the errata sheet should instead correspond to lines 149:24 and 150:7, respectively.

4

Towards the end of the deposition, Ms. Schaffer asked Professor Horton: "[B]ecause you have not made an engineering analysis based on the dimensions of the original equipment design, you were unable to identify any defective condition in the OEM design [i.e., the original transport rod], correct?" Horton Dep. 157:6–9. Professor Horton responded: "Correct." Horton Dep. 157:10. However, on her errata sheet, Professor Horton sought to supplement this response, again on the grounds of "Accuracy," to add "other than the absence of a backup restraining device, such as a chain."[3] Errata Sheet 1. Professor Horton had not previously mentioned the use of a chain as a secondary restraining device on the transport rod in her expert report or in her deposition, nor was there such a mention in the expert designation letter.

Ms. Schaffer followed up with a similar question:

> Because you have not done any analysis of the dimensions of these components and the methodology advised by Ford for transporting the cotter bar, you cannot offer any opinion of defect relating to the methodology of transport provided by Ford Motor Company in the operator's manual using the original equipment components, correct?

Horton Dep. 157:11–16. Professor Horton again responded: "Correct." Horton Dep. 157:17. And Professor Horton again used her errata sheet to supplement this response on the grounds of "Accuracy" to add "other than a backup restraining device." Errata Sheet 1.

---

[3] This is one of several examples where the errata sheet line designation appears to be five lines lower than the answer that it is supposed to be modifying. That is, it is clear from the context of the deposition, and from the Plaintiff's denials of DSOF ¶¶ 45 and 46 and the citations accompanying those denials, that the errata sheet line designations for lines 157:15, 157:22, 158:25, 162:6, and 170:9 were actually intended to modify lines 157:10, 157:17, 158:20, 162:1, and 170:4, respectively.

5

Ms. Schaffer then asked Professor Horton whether it was "fair to state that because you have not examined the original equipment transport rod . . . you have no idea whether positive restraint in all directions was required relative to this design." Horton Dep. 158:13–18. Professor Horton responded: "I have not analyzed this piece to determine whether any additional restraint is required." Horton Dep. 158:19–20. But she subsequently used her errata sheet to supplement this response on the grounds of "Accuracy" to add: "However, a secondary restraining device was necessary." Errata Sheet 2.

Ms. Schaffer concluded her initial questioning of Professor Horton by asking her a few wrap-up questions. First, she asked: "Have we now discussed all of the opinions that you've reached in connection with your work on this case?" Horton Dep. 161:13–14. Professor Horton responded: "We've discussed everything that I have reported on this." Horton Dep. 161:15–16. Up to this point in the deposition, neither Ms. Schaffer nor Professor Horton had discussed the expert designation letter. Second, Ms. Schaffer queried: "We've now marked all of the documents that are contained within your file or that you otherwise referred to or relied upon in connection with your opinions in this case." Horton Dep. 161:22–25. Professor Horton confirmed that this was true with a simple "Yes." Horton Dep. 162:1. But then Professor Horton subsequently used her errata sheet to supplement this response on the grounds of "Accuracy" to add: "other than the expert designation letter of 11/8/21." Errata Sheet 2.

6

At this point in the deposition, Ms. Schaffer had concluded her direct examination of Professor Horton, and counsel for the Plaintiff (Erik Black) began to question Professor Horton. Mr. Black started by discussing the expert designation letter, the first time the letter was mentioned at the deposition. Mr. Black read a portion of the letter (most of the excerpt quoted above) and asked Professor Horton: "[A]re those statements additional opinions that you are willing to offer with respect to this case[?]" Horton Dep. 164:18–165:6. Professor Horton did not confirm that they were. Instead she gave the somewhat nonresponsive answer: "I agree that cotter pins can fail." Horton Dep. 165:11. Mr. Black followed up: "Have you finished answering or are you still thinking?" Horton Dep. 165:12–13. Professor Horton responded: "While I could provide an opinion, I would not have an engineering analysis behind it." Horton Dep. 165:14–15.

Mr. Black then went through specific portions of the expert designation letter. He read the portion of the letter that states: "Professor Horton is of the opinion that both the original restraining device and the replacement one were defective." Horton Dep. 166:20–22. Professor Horton stopped Mr. Black and clarified that she did "not know if the original [was] defective." Horton Dep. 166:23–167:1. Mr. Black then asked Professor Horton about the discussion of the secondary restraining device in the expert designation letter. Horton Dep. 167:4–169:17. After a lengthy back-and-forth, some objections by Ms. Schaffer, and some confusion on the part of Professor Horton, Mr. Black asked the following question: "[W]ould the original design by Ford have benefitted from having a secondary restraining device in addition to the cotter pins

7

that were on the original device itself[?]" Horton Dep. 169:21–24. Professor Horton responded: "I do not know if it would have benefitted." Horton Dep. 170:4. Professor Horton subsequently supplemented this answer on her errata sheet on the grounds of "Accuracy" by adding the following: "However, a secondary restraining device, such as a chain, would have made transport failure almost impossible, at minimal additional expense in comparison to the risk to others, with no loss of functionality for the mower." Errata Sheet 2. This discussion of the cost of a secondary restraining device and its effect on the functionality of the Mower does not appear elsewhere in the deposition, in the expert report, or in the expert designation letter.

At the conclusion of Mr. Black's examination of Professor Horton, Ms. Schaffer asked a few follow-up questions. Among the questions that Ms. Schaffer asked Professor Horton was: "Is it correct to understand that you have never issued a report criticizing the design of the original equipment of [the] transport rod and [the] methodology of transporting the sickle blade?" Horton Dep. 173:5–8. Professor Horton responded: "That is correct." Horton Dep. 173:9. Ms. Schaffer also asked Professor Horton whether she had ever "reached the opinion that the original restraining device as part of Ford's original design was flawed." Horton Dep. 173:10–12. Professor Horton responded by stating that she had "never performed an analysis" and thus she "had no basis for anything." Horton Dep. 173:16–17.

When the Plaintiff sued the Defendant in August of 2019, he asserted a product liability claim originally premised on two theories of liability, design defect and failure to warn. Compl. ¶¶ 11–13 (ECF No. 1). The Plaintiff has now abandoned his

8

failure to warn theory. Stip. of the Parties Withdrawing the Pl.'s Failure to Warn Claim (ECF No. 63); SOF ¶ 61. As a result, the Defendant's liability depends on the idea that the original transport rod was defectively designed. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. ("**Pl.'s Opp'n**") 3 (ECF No. 71). And the Plaintiff's theory of the case is that the original transport rod was defective because it lacked a secondary restraint system (i.e., a backup mechanism for restraining the Mower's blade should the primary restraint system—the transport rod—fail). Pl.'s Opp'n 2.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party' . . . ." *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). The moving party bears the initial burden of showing that no such dispute exists, and the nonmoving party must then respond "with sufficient evidence to allow a reasonable jury to find in its favor with respect to each issue on which it has the burden of proof." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (internal quotation marks omitted).

In reviewing a motion for summary judgment, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its

favor. *EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021). But I am "not obliged either 'to draw unreasonable inferences or credit bald assertions or empty conclusions.' " *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)); *see also Barros-Villahermosa v. United States*, 642 F.3d 56, 58 (1st Cir. 2011) ("Mere allegations, or conjecture unsupported in the record, are insufficient." (internal quotation marks omitted)).

## DISCUSSION

The Defendant makes a number of arguments in support of its motion for summary judgment. The Defendant's principal argument is that the Plaintiff has failed to put forward sufficient admissible evidence for a jury to be able to conclude that the Mower's design (with the original transport rod) was defective because Professor Horton's testimony failed to establish that it was. Def.'s Mot. 5–13. Because I agree that the Plaintiff lacks any admissible evidence of a design defect, I need not address the Defendant's other arguments.

The Plaintiff identifies Professor Horton's errata sheet as being evidence that the design of Ford's original transport rod was defective—that is, that a secondary restraint system was required. Pl.'s Opp'n 3 ("There should be no question that Professor Horton's testimony on her errata sheet generates a genuine issue of material fact as to whether Ford's mower design was defective."), 7 ("Professor Horton's testimony on her errata sheet generates a genuine issue of material fact as to whether Ford's mower design was defective."); DSOF ¶¶ 67–70. Because the

Plaintiff fails to identify any other evidence of a defect, he essentially concedes that, without this errata sheet, summary judgment for the Defendant is warranted. As a result, the crucial question is whether this errata sheet is admissible evidence.

Professor Horton's errata sheet directly contradicts her deposition nine different times. She sought to change her testimony that all of her opinions based on her engineering expertise were contained in her expert report to say that she also expressed opinions in the expert designation letter. *Compare* Horton Dep. 35:23–36:3, *with* Errata Sheet 1. She sought to change her testimony that all of her conclusions from inspecting the Mower were in her expert report to say that she also had drawn conclusions in the expert designation letter. *Compare* Horton Dep. 135:1–10, *with* Errata Sheet 1. She twice sought to change her testimony that she had no opinions that the original transport rod was defective to say that she *did* have such opinions. *Compare* Horton Dep. 149:22–24, *and* 149:25–150:7, *with* Errata Sheet 1. She twice sought to change her testimony that she had identified no defect in the original transport rod to say that she *had* identified such a defect. *Compare* Horton Dep. 157:6–10, *and* 157:11–17, *with* Errata Sheet 1. She sought to change her testimony that she had not determined whether a secondary restraint was required to say that a secondary restraint *was* required. *Compare* Horton Dep. 158:13–20, *with* Errata Sheet 2. She sought to change her testimony that she had discussed all of the documents that she had relied upon to add that she had also relied upon the expert designation letter (despite not having previously discussed it). *Compare* Horton Dep. 161:22–162:1, *with* Errata Sheet 2. And she sought to change her testimony that she

11

did not know whether the Mower's original design would have benefited from a secondary restraint system to say that it *would* have benefited from such a system. *Compare* Horton Dep. 169:21–170:4, *with* Errata Sheet 2.

What all of these contradictions have in common is that each contradicts Professor Horton's deposition testimony in the exact same manner—it introduces information into the Record related to the theory that the Mower needed a secondary restraint system. But this theory is entirely missing from Professor Horton's expert report and her pre-errata deposition testimony. Moreover, the Plaintiff uses the errata sheet to introduce evidence that does not appear in the expert report, the expert designation letter, or Professor Horton's original deposition testimony: that the chain would be an adequate secondary restraint, it would have made transport failure almost impossible, it would have been an inexpensive addition as compared to the risk of not having one, and it would not impair the functionality of the Mower. The parties dispute whether Rule 30(e)(1) allows a deponent to use an errata sheet to contradict her deposition testimony in this manner.

Rule 30(e)(1) of the Federal Rules of Civil Procedure provides that, after a deposition, a deponent may, within thirty days, make "changes in form or substance" to the deposition transcript and, if he/she does so, "sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1). The Plaintiff puts significant weight on the fact that Rule 30(e)(1) specifically allows an errata to make substantive changes to deposition testimony. Pl.'s Opp'n 3–4. But the Plaintiff overreads the rule and the case law interpreting it.

The Plaintiff is correct that Rule 30(e)(1) allows for substantive changes to deposition testimony, and it makes sense that it does. There are times when a stenographer makes a mistake, such as when a transcript erroneously contains (or is lacking) a "not." *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). Or, for various reasons, a deponent may need "to change his deposition [testimony] from what he said to what he meant." *Id.*; *see Pina v. Children's Place*, 740 F.3d 785, 792 (1st Cir. 2014) ("Rule 30(e) does not limit a party to the correction of stenographic errors."). But that does not mean that Rule 30(e) allows a party to change any answer in any way for any reason whatsoever. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) ("While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment.").

Rule 30(e) allows for changes to deposition testimony only when "the reasons for making" these changes are listed. Fed. R. Civ. P. 30(e)(1)(B). An errata that changes deposition testimony must be supported by "the reasons for making" those changes. And multiple courts have held that deploying an errata sheet to radically change deposition testimony without adequate explanation is improper. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268 (3d Cir. 2010) ("[W]hen reviewing a motion for summary judgment, a district court does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive changes that materially contradict prior deposition testimony, if the party proffering the changes fails to

13

provide sufficient justification."); *Hambleton*, 397 F.3d at 1224–25 ("The absence of any stated reasons for the changes supports the magistrate judge's concern that the 'corrections' were not corrections at all, but rather purposeful rewrites tailored to manufacture an issue of material fact . . . and to avoid a[n adverse] summary judgment ruling . . . ."); *Thorn*, 207 F.3d at 389 ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.' "); *cf. Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) ("[Plaintiff's counsel's] submission of the novella-length errata sheet making a slew of material changes to their client's deposition testimony was improper.").

Professor Horton's errata sheet is problematic not necessarily because she sought to contradict her original testimony but that she did so without adequately explaining the reason(s) for the contradiction. *See EBC, Inc.*, 618 F.3d at 268; *Hambleton*, 397 F.3d at 1224–25 (9th Cir. 2005) ("A statement of reasons explaining corrections is an important component of errata submitted pursuant to FRCP 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose."); *Lamarche v. Metro. Life Ins. Co.*, 236 F. Supp. 2d 34, 41 (D. Me. 2002) ("[A] party *may* contradict prior sworn testimony provided that a satisfactory explanation is provided."). The only reasons that Professor Horton provided were "clarity" (to explain one contradiction) and "accuracy" (to explain the other eight). But these conclusory reasons offer no explanation at all. The errata to line 36:3 of Professor Horton's deposition supposedly added "[c]larity" to the

14

testimony. But it did not clarify the testimony. It contradicted it. As for the remaining errata, although, in theory, these changes may have made Professor Horton's testimony more accurate, this perfunctory rationale was similarly unhelpful. This is because Professor Horton offered no explanation for *why* these errata made her testimony more accurate or why her original testimony had been *inaccurate*.

There could be any number of legitimate explanations for why Professor Horton's errata sheet was necessary. She could have misheard or misunderstood the questions. She could have misspoken. She could have been fatigued or confused. *See Lamarche*, 236 F. Supp. 2d at 41. But without any explanation as to the reason why Professor Horton felt compelled to contradict her testimony, particularly to such a large extent, I must reject her errata sheet.[4]

The Plaintiff appears to be arguing that, if a party tries to introduce a sham errata sheet into evidence, Rule 30(e) prevents a court from being able to do anything about it. I do not agree. Although the First Circuit has not addressed the precise issue

---

[4] In emphasizing that Rule 30(e) allows for substantive changes, the Plaintiff points out that some courts have responded to substantive errata changes by authorizing the reopening of a deposition. Pl. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 3–4 (ECF No. 71). But the four cases that the Plaintiff cites are inapposite. In one, the changes were consistent with the deponent's original testimony. *See Pina v. Children's Place*, 740 F.3d 785, 792 (1st Cir. 2014). In another, the changes were "limited in number and in scope." *See McCue v. City of Bangor*, No. 1:14-cv-00098-GZS, 2015 WL 566575, at *2 (D. Me. Feb. 11, 2015). In a third, the changes were made for specifically identified reasons. *See Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34, 35 (D. Me. 2005) ("[S]o long as the deponent gives reasons for changes or additions to his deposition testimony under the terms of Rule 30(e) . . . no action by the court is indicated."); Errata Sheet for Dep. of Phillip E. Johnson, *Glenwood Farms, Inc. v. Ivey*, 2:03-cv-00217-GZS (ECF No. 181-2). Finally, the fourth case did not involve consideration of an errata at the motion for summary judgment stage. Yet that court, too, emphasized the need for the errata to be justified by reasons for the changes. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 118–20 (D. Mass. 2001) ("The deponent, however, must supply a reason for the changes which is not conclusory."). Given the number of contradictions in the errata sheet, the materiality of those contradictions to the issues at hand, and the lack of an adequate explanation for these changes, I find that Professor Horton's errata sheet should be dismissed out of hand.

of whether a sham errata sheet can be used to manufacture a material factual dispute to avoid summary judgment, I find the First Circuit's discussion of the sham affidavit doctrine to be illustrative. First Circuit law is clear "that 'when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.' " *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994)). Other courts and commentators have applied this same doctrine "to post-deposition testimonial corrections made by a party pursuant to Rule 30(e)(1)(B)." *McDonough v. City of Portland*, No. 2:15-cv-00153-JDL, 2016 WL 3645148, at *5 (D. Me. June 30, 2016), *aff'd*, 855 F.3d 452 (1st Cir. 2017); *see EBC, Inc.*, 618 F.3d at 268 (finding that " 'sham affidavit' cases . . . provide useful guidance"); *Hambleton*, 397 F.3d at 1225 ("We think this type of 'sham' correction is akin to a 'sham' affidavit."); *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1282 (10th Cir. 2003) ("We see no reason to treat Rule 30(e) corrections differently than affidavits . . . ."); *Thorn*, 207 F.3d at 389 (analogizing to cases involving contradictory subsequent affidavits). I find this authority to be persuasive, and I conclude that the errata sheet must be rejected for the same reasons that I would reject a sham affidavit under the same circumstances.

Without taking into consideration this errata sheet, the Plaintiff has no evidence that the Mower should have had a secondary restraint system, and so he

16

lacks any evidence that the Mower's design was defective.[5] The Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion for summary judgment (ECF No. 65). Because I grant the Defendant's motion for summary judgment, the Defendant's unopposed motion to exclude the expert testimony of Arica Millett and Ryan Fitch (ECF No. 68) is **DENIED** as moot.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 21st day of July, 2022.

---

[5] In fact, the only evidence left in the Record is that, according to Ford's expert, a secondary restraint was *not* necessary. SOF ¶ 57.